

**FILED**
**Jun 24, 2026**
**11:06 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Paula Smith | Docket Nos. 2025-50-5373 |
| | 2025-50-5374 |
| v. | |
| | State File Nos. 50279-2025 |
| McNeilus Companies, et al. | 51831-2025 |

Appeal from the Court of Workers'
Compensation Claims
Dale A. Tipps, Judge

---

### Affirmed and Remanded

---

In this interlocutory appeal, the employee asserts the trial court erred in denying her request for additional temporary disability and medical benefits. Specifically, she sought temporary disability benefits from the date payments were terminated to the present, compensation for underpayment due to an incorrect compensation rate, and an order for continuing medical treatment. The employer argued it had provided all workers' compensation benefits to which the employee is entitled. Following a hearing, the trial court noted that the employer provided authorized medical treatment with a panel physician and temporary disability benefits until she was released at maximum medical improvement. The court also found the employee had presented no proof that her weekly compensation rate was improperly calculated. The trial court declined to award any additional benefits, and the employee has appealed. Having carefully reviewed the record, we affirm the trial court's order and remand the case.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Meredith B. Weaver joined.

Paula Smith, employee-appellant, pro se

Neil McIntire, Nashville, Tennessee, for the employer-appellee, McNeilus Companies

### Factual and Procedural Background

Paula Smith ("Employee") alleges that, while working for McNeilus Companies ("Employer"), she sustained a workplace injury to her left wrist on July 10, 2025, and a subsequent injury to her right knee on July 28, 2025. Employee was seen at St. Thomas

1

Ascension Urgent Care for initial treatment of both injuries. Regarding her left wrist, the medical provider diagnosed Employee with "unspecified synovitis and tenosynovitis" of the wrist and placed her on light-duty work restrictions. Employer accommodated work restrictions by placing her in a different role at work. On July 23, Employee began experiencing knee pain while performing her job duties and reported an injury to her right knee. She returned to St. Thomas Urgent Care for this condition. Following that visit, during which no new work restrictions were assigned, Employee did not return to work.

Thereafter, Employer provided a panel of orthopedic physicians from which Employee selected Dr. Timothy Steinagle. Employee first saw Dr. Steinagle on October 23, 2025 for her right knee complaints. Dr. Steinagle ordered an MRI and returned Employee to work with restrictions. The results of the MRI revealed "[m]ild edema of the suprapatellar fat pad, suggestive of fat pad impingement syndrome" and "[n]o other significant internal derangement of the knee." Thereafter, on December 11, Dr. Steinagle observed that the right knee MRI showed no evidence of internal derangement or other abnormalities necessitating further medical treatment, and he placed Employee at maximum medical improvement ("MMI"). A Worklink report noted "[n]o follow-up required," but Dr. Steinagle did not refuse to see Employee again. Following Employee's placement at MMI, Employer discontinued temporary disability benefits.[1]

Thereafter, Employee sought an order for continuing medical treatment in the form of physical therapy for her knee, as well as continuing temporary disability benefits. Employee also contended that her compensation rate was incorrectly calculated and sought a penalty for delayed payment of certain temporary disability benefits.

During the April 7, 2026 expedited hearing, Employee testified that she still had pain in her right knee and that Employer had denied her request to see a different provider. Employee testified she experienced problems receiving timely care, including having not been provided a panel of physicians timely, and she asserted that she was still in need of physical therapy for her knee. She further testified that her wrist injury was partially denied, resulting in her receiving bills from medical providers for care she received for this injury. Employee also testified that her temporary disability benefits were not paid timely, resulting in financial hardship, and that her compensation rate had not been calculated correctly.

In its April 13, 2026 order, the trial court noted that the records of Employee's disability payments reflect that the first check was issued to Employee on August 21 for four weeks of benefits beginning on July 28, or the date she reported the knee injury. The court observed that Employer missed another payment, which it made up one week later. Once direct deposit was arranged, there were no more problems with the timely payment of disability benefits. With respect to Employee's contention that she is entitled to

---

[1] Employee indicated that her wrist symptoms have resolved.

additional medical care, the court noted that Employee selected Dr. Steinagle from a panel of physicians and that Employer authorized treatment with him until he placed her at MMI. The court found that, in the absence of any contrary medical opinions submitted by Employee, she was not likely to prevail at trial in establishing her entitlement to additional medical benefits at this stage of the case. Similarly, the court determined that because Employee offered no evidence of an additional period of disability that would entitle her to additional temporary disability benefits or to payment of benefits at an adjusted compensation rate, she was not entitled to additional disability payments. Employee has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Id.* Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

**Analysis**

In her notice of appeal, Employee contends the trial court applied an incorrect legal standard, selectively admitted evidence, failed to rule on pending motions, and erred in according the authorized treating physician a presumption of correctness in light of objective radiological evidence contradicting the MMI determination. In response, Employer asserts the trial court correctly decided issues of admissibility, gave appropriate weight to Dr. Steinagle's opinion as the authorized treating physician, and correctly denied Employee's request for resumption of temporary disability benefits after she was placed at MMI.

3

As an initial matter, it is a well-settled principle that the employee in a workers' compensation case bears the burden of proving all essential elements of her claim, even at an interlocutory stage of the case. *See Scott v. Integrity Staffing Solutions*, No. 2015-05-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). Although an employee need only prove a likelihood of prevailing at trial to secure benefits at an interlocutory hearing, "this lesser evidentiary standard . . . does not relieve an employee of the burden of [production] at an expedited hearing." *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). Here, it was Employee's burden to come forward with sufficient evidence to convince the court she is likely to prevail at trial in proving entitlement to additional temporary disability and/or medical benefits

In her brief on appeal, Employee argues that the court "changed the operative evidentiary rules" during the hearing by admitting certain evidence and denying other documents. Employee asserts this, in effect, resulted in her having to re-prove her case, even though a record was already created, without fair advance notice. Employee further argues that the trial court "refus[ed] to meaningfully consider the preserved record [she] spent months building," asserting that she followed the procedures set out in Tenn. Comp. R. and Regs 0800-02-21-.15 for requesting a hearing and presenting certain documents and evidence for the court's consideration.

Specifically, the rule Employee cited establishes a time frame within which documentary evidence must be filed with the court, and it cautions that "[e]vidence or witnesses not disclosed in accordance with this rule, except for witnesses or evidence intended for impeachment or rebuttal purposes, will not be considered unless good cause is shown for why the evidence/witness was not timely disclosed." In response to Employee's arguments, Employer asserts the burden is on the parties to review all prior pleadings and other filings to identify which documents they want considered as "evidence" for purposes of the expedited hearing. Here, the trial court considered the opinions and medical records of Dr. Steinagle regarding diagnosis, causation, and MMI. Employee offered no admissible evidence contrary to his opinions and the court sustained Employer's hearsay and foundational objections when she attempted to introduce certain documents into evidence.

Employee also asserts Employer's documents "had not been timely disclosed." However, our review of the record supports Employer's contention that all documents offered into evidence at the hearing were timely filed with the court on March 25, 2025, thirteen days before the April 7 expedited hearing. In addition, we disagree with Employee's contention that Employer "was allowed broader latitude in framing the case and cross-examining" Employee or that the court demonstrated an "asymetri[c]al" approach to evidentiary decisions. In short, Employee claims she was treated unfairly. We

respectfully disagree.  As noted above, Employee had the burden of proving all essential elements of her claim.  She and she alone had the burden to offer admissible evidence that established her entitlement to additional benefits.  Employer had no such burden under the circumstances of this case.  We find no evidence in this record that the trial court departed from established rules, improperly admitted or excluded evidence, or placed any unfair burden on Employee.

Self-represented litigants must be held to the same standards as represented parties. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000).  As explained by the Tennessee Court of Appeals:

> The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system.  However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary.  Thus, *the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe*. . . . Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries.

*Hessmer v. Hessmer*, 138 S.W.3d 901, 903-04 (Tenn. Ct. App. 2003) (citations omitted) (emphasis added).  Self-represented litigants, just like represented litigants, must present admissible evidence to support their claims, and the trial court is tasked with considering objections raised by the opposing party concerning the admissibility of evidence.  Although Employee may have filed what she considered a compelling record in her case, those documents must still meet the evidentiary standards set out in the Tennessee Rules of Evidence for the trial court to consider them.  Filing the records with the court prior to the hearing is not the same as having them admitted into evidence during the hearing, which the trial court explained at the expedited hearing.  In short, our review of the record reveals no errors by the trial court in its evidentiary decisions.[2]

*Consideration of Medical Evidence*

Employee next contends that Dr. Steinagle's conclusions regarding the absence of objective evidence of a work-related injury and his MMI determination are inconsistent with the radiologist's interpretation of diagnostic imaging.  However, Employee has offered no countervailing medical opinions in support of her argument.  The trial court correctly noted that, given his status as the authorized physician, Dr. Steinagle's medical opinion was entitled to a presumption of correctness pursuant to Tennessee Code Annotated section 50-6-102(12)(E), and it determined Employee had "presented no

---

[2] Given the interlocutory nature of the trial court's order, Employee is not foreclosed from offering proof *in an admissible form* at any subsequent hearing.

medical opinions to challenge his conclusions or overcome that presumption." As we have previously observed, "parties and their lawyers cannot rely solely on their own medical interpretations of the evidence to successfully support their arguments." *Lurz v. Int'l Paper Co.*, No. 2015-02-0462, 2018 TN Wrk. Comp. App. Bd. LEXIS 8, at *17 (Tenn. Workers' Comp. App. Bd. Feb. 14, 2018). We agree with the trial court that, without countervailing medical proof, the only medical evidence in the record addressing whether Employee suffered a work-related injury or reached MMI is that of Dr. Steinagle. Temporary disability benefits terminate upon, among other things, the occurrence of MMI. *See, e.g.*, *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015). Consequently, Employee's request for additional medical and temporary disability benefits must fail because she provided no expert medical opinions in support of her claim for additional benefits at this time.[3]

Finally, Employee conceded at the expedited hearing that she had no evidence that Employer had erroneously calculated her compensation rate. Thus, we consider this issue to have been waived.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employee.

---

[3] We emphasize, however, that Employee remains entitled to reasonable and necessary medical treatment arising primarily from her alleged work accidents, and Dr. Steinagle remains her authorized treating physician. We hold *only* that Employee has not come forward with sufficient evidence at this interlocutory stage of the case to show that she is entitled to any specific medical treatment at this time in the absence of an expert medical opinion supporting the medical necessity for any such treatment.